[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-11392

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 16, 2004
THOMAS K. KAHN
CLERK

D.C. Docket No. 02-00127-CV-CDL-1

LIFESTAR AMBULANCE SERVICE, INC.,
a Georgia corporation, individually and on behalf of
a class of all entities similarly situated,
COASTAL MEDICAL TRANSPORT, INC.,
a North Carolina corporation, individually and on behalf
of a class of all entities similarly situated,
AMBULANCE SERVICES, INC.,
a Tennessee corporation, individually and on behalf of
a class of all entities similarly situated,

Plaintiffs-Appellees,

versus

UNITED STATES OF AMERICA,
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
TOMMY THOMPSON, in his official capacity as
Secretary/Director of D.H.H.S.,
HEALTH CARE FINANCING ADMINISTRATION (CENTERS
FOR MEDICARE & MEDICAID SERVICES),
THOMAS A. SCULLY, in his official capacity as
Secretary/Director of H.C.F.A./C.M.S.,

Defendants-Appellants.

Appeal from the United States District Court
for the Middle District of Georgia

**(April 16, 2004)**

Before ANDERSON, BLACK and HILL, Circuit Judges.

HILL, Circuit Judge:

This case arises from a dispute over the Medicare reimbursement rates for ambulance service suppliers.  The district court denied defendants' motion to dismiss for want of mandamus jurisdiction, entered summary judgment on the merits for plaintiffs, and certified them as a class.  Defendants timely filed this appeal.

I.

Plaintiffs are ambulance suppliers based in Georgia, North Carolina, and Tennessee, who provide ambulance services to Medicare recipients.  They seek to bring a class action against the Department of Health and Human Services ("DHHS"), the Centers for Medicare and Medicaid Services (formerly the Health Care Financing Administration), and individuals associated with those entities.  Plaintiffs allege that the federal defendants failed to comply with the Balanced

Budget Act of 1997 ("BBA"), requiring them to establish by January 1, 2000, a national fee schedule for payment of ambulance services. Pub. L. No. 105-33, § 4531(b), 111 Stat. 451 (1997), codified at 42 U.S.C. § 1395m(1). They also allege that DHHS has failed to timely implement certain mileage fee schedules as required by the Medicare, Medicaid and SCHIOP Benefits Improvement and Protection Act of 2000 ("BIPA"). Plaintiffs seek injunctive relief in the form of a writ of mandamus ordering DHHS to adopt fee schedules that comply with those mandates, and to apply them retroactively to services provided from January 1, 2000 forward.[1]

The federal defendants moved to dismiss this action on the basis that plaintiffs failed to exhaust their administrative remedies as required by the Medicare Act. *See* 42 U.S.C. § 1395ff(b) and 42 U.S.C. § 1395ii. Both parties also filed cross-motions for summary judgment on the merits.

The district court denied the motion to dismiss, holding that the mandamus jurisdiction invoked by plaintiffs under 23 U.S.C. § 1361 is both available and appropriate in this case, thereby obviating the necessity for them to exhaust their

---

[1] Because we do not reach the merits of this case, we do not consider how the federal defendants might be ordered to comply with a statutory mandate (budget neutrality) now impossible to meet.

claims administratively. The court then entered summary judgment for plaintiffs on the merits of their claim, issuing a writ of mandamus to the Secretary of Health and Human Services (the "Secretary") to implement a fee schedule for the relevant time period, and certifying a class of ambulance providers.[2]

The threshold issue we must decide is whether the district court correctly assumed mandamus jurisdiction over this action, since, in the absence of subject-matter jurisdiction, we may not proceed. We review the district court's determination that it had mandamus jurisdiction under 28 U.S.C. § 1361 *de novo*. *Cash v. Barnhart*, 327 F.3d 1252, 1255 n. 4 (11th Cir. 2003).

II.

---

[2] The district court questioned why it should certify a class since the relief sought would be obtained by individual plaintiffs applying for payment under the rate schedule ordered by the court to be implemented by the DHHS with recourse to administrative review in the event of disputes. Apparently, however, the court adopted the plaintiffs' argument that the implementation of the retroactive fee schedule would "create an entitlement to a substantial fund" and that it could "retain jurisdiction to determine whether [DHHS] complied with the Court's order." The court also noted the relevance of the certification to the issue of attorneys' fees, stating "I understand that down the road, if the plaintiffs' counsel has produced a substantial result, then you still get paid, presumably, even if there's not a big damage award that the Court has to divvy up." R.E. 32-34.

Mandamus jurisdiction is appropriate[3] only where (1) the defendant owes a clear nondiscretionary duty to the plaintiff and (2) the plaintiff has exhausted all other avenues of relief. *Heckler v. Ringer*, 466 U.S. 602, 615 (1984). The district court held that plaintiffs satisfied both of these preconditions for invoking mandamus jurisdiction under Section 1361. We disagree.

Plaintiffs cannot invoke the extraordinary remedy of mandamus because they have an alternative "avenue of relief." *Mallard. v. U.S. District Court*, 490 U.S. 296, 309 (1989). The Medicare Act establishes a comprehensive remedial scheme, providing both administrative hearing rights for aggrieved providers, such as plaintiffs, and judicial review of the Secretary's final decisions. *Ringer*, 466 U.S. at 605-06 and n. 1 (quoting 42 U.S.C. § 405(g)). The Supreme Court has made clear that "[o]rdinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27-28 (1943).

---

[3] We assume, without deciding, that mandamus jurisdiction is not barred by 42 U.S.C. § 405(h) and, therefore, is available for a claim arising under the Medicare statute. *See Buchanan v. Apfel*, 249 F.3d 485, 491-92 (6th Cir. 2001); *Cordoba v. Massanari*, 256 F.3d 1044, 1047 (10th Cir. 2001); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001); *United States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 502, 515 (4th Cir. 1999); *Briggs v. Sullivan*, 886 F.2d 1132, 1142 (9th Cir. 1989); *Burnett v. Bowen*, 830 F.2d 731, 736-38 (7th Cir. 1987); *City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir. 1984); *Belles v. Schweiker*, 720 F.2d 509, 512-13 (8th Cir. 1983); *Colonial Penn Ins. Co. v. Heckler*, 721 F.2d 431, 437 n. 2 (3d Cir. 1983).

It is undisputed that plaintiffs did not resort to these administrative remedies. They filed no claim with DHSS for payment under the fee schedule required by the BBA and BIPA. Plaintiffs contend, however, and the district court agreed, that Medicare's administrative remedies were "realistically [un]available" to plaintiffs because "the relief sought by the Plaintiffs in this case could not be secured in the administrative process."[4] The government's suggestion to the contrary, the court concluded, "ignores reality."

The reality, however, is that the Medicare statute "demands the 'channeling' of virtually all legal attacks through the [DHSS]" before a health care provider may seek judicial review of a claim arising under the Medicare statute. *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 13 (2000).[5] This "nearly absolute channeling requirement" serves important governmental interests in administrative efficiency and judicial economy, and "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes." *Id.* at 2.

---

[4] Plaintiffs argued that, because no ALJ could compel the Secretary to alter the effective date of the fee schedule regulations, resort to Medicare's administrative review procedures would be futile.

[5] Although the exhaustion requirement may be waived, *see Matthews v. Eldridge*, 424 U.S. 319, 330-32 & n.11 (1976), plaintiffs cannot meet any of the three requirements for waiver, including that they show irreparable injury if forced to exhaust. *See Sampson v. Murray*, 415 U.S. 61, 90-91 (1974) (recoverable monetary loss does not constitute irreparable injury).

Nor is Medicare's statutory exhaustion requirement subject to judge-made exceptions on a case by case basis when a particular court might find the requirement too burdensome or futile. *Id.*at 2 (405[h]'s bar reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies' . . . by preventing the application of exceptions to those doctrines"). As we noted in *Cochran v. U. S. Health Care Financing Admin.*, 291 F. 3d 775, 780 (11th Cir. 2002):

> It is true that in some contexts, administrative exhaustion requirements are tempered by judge-made exceptions, chief among which are that exhaustion of administrative remedies sometimes is not required if resort to them would be futile, or if the remedy they offer is inadequate. Those judge-made exceptions do not apply , however, to a statutorily-mandated exhaustion requirement like [Medicare's].

*See also Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998) ("Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply").

Ultimately, the issue in this case is whether the claim of mandamus jurisdiction accomplishes the nullification of Medicare's exhaustion requirement by permitting plaintiffs to argue that they have no other avenue of relief because resort to administrative remedies is "futile." Thus, under the authority of

7

mandamus, the doctrine of judge-made exceptions to administrative exhaustion is resurrected .[6]

Plaintiffs' view of the propriety of mandamus jurisdiction is that it is directly related to the likelihood that they will prevail administratively. In their view, as the likelihood that they will prevail before the administrative hearing officer goes down, the requirement that they appear before him also diminishes. Because no hearing officer could compel the Secretary to issue new fee schedule regulations or declare invalid the regulations in effect now, plaintiffs characterize their chances for administrative relief as "hopeless." This leads them to conclude that their administrative remedies are "inadequate," thus entitling them to invoke the district court's mandamus jurisdiction. It is not the *availability* of the administrative avenue of relief that figures prominently in their calculation of its impact on mandamus jurisdiction, but rather the *attractiveness* of it in comparison to mandamus jurisdiction.[7]

---

[6] This would be so at least where plaintiff's right to relief is clear.

[7] We have reviewed the record and find no support for plaintiffs' contentions that the Secretary barred them from challenging implementation of the fee schedule provisions in the administrative process. The manual provision to which they cite was addresses only to the agency's carriers and intermediaries,, i.e., to the agency's initial claims processors, not to the agency's ALJ's. It did not preclude any plaintiff from arguing, in an administrative appeal from an initial payment decision, that the Secretary had an obligation to promulgate and apply a fee schedule. Nor did it prevent individual plaintiffs from submitting fee schedule claims in the administrative process; some who did so obtained relief similar to that sought by plaintiffs here.

8

This calculus was rejected by the Supreme Court twenty years ago when it held that mandamus jurisdiction does not lie merely because resort to the administrative process appears futile. *Ringer*, 466 U.S. at 616-17. In *Ringer*, the Secretary had issued a formal ruling holding that a particular surgical procedure was still experimental and thus could not be covered by Medicare. This ruling was binding upon the administrative hearing officers, and, thus, the *Ringer* plaintiffs contended that administratively contesting the denial of coverage was futile. They concluded that mandamus relief was, therefore, permissible because they had no "alternative avenue of relief."

The Court rejected this argument, holding that alleged limitations on the remedial powers of the hearing officers does not render Medicare's administrative remedies a nullity. *Id.* at 616-17 The Court held that the plaintiffs there "clearly have an adequate remedy" under Medicare, including administrative hearing and juridical review of any adverse final decision rendered for *whatever* reason. *Id.* The Court concluded that no writ of mandamus could properly issue because

---

*See Highlander Ambulance*, Adm. Docket No. 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 (July 16, 2002).

9

mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief." *Id.* at 616.

The Supreme Court has recently reaffirmed the immunity of Medicare's exhaustion requirement to the allegation of futility. *Illinois Council*, 529 U.S. at 2. In *Illinois Council,* the Court held that, despite the fact that some claims, such as constitutional or statutory challenges, cannot be resolved administratively, they must still proceed first through the administrative process. 529 U.S. at 23-24. Such claims are subject to plenary judicial review under the Medicare remedial scheme only *after* the administrative review process has been exhausted. *Id.* As the Court concluded:

> The fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one . . . is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, including, where necessary, the authority to develop an evidentiary record.

*Id.* (internal citations and quotations omitted). *Illinois Council*, thus, expressly holds that the vitality of the exhaustion requirement is not vitiated by statutory claims that cannot be resolved initially at the administrative level. *Id.*

*Illinois Council* teaches the importance of distinguishing between administrative *relief* and an administrative *remedy*. The fact that plaintiffs may not be able to secure the relief they seek at the administrative hearing stage of their claim does not mean that the Act's remedial structure, which includes plenary judicial review, does not provide an adequate remedy. *Id.* Plaintiffs have cited no case, and we know of none, that says that a statutory avenue of review may be deemed "inadequate" for purposes of invoking mandamus jurisdiction merely because full relief must await judicial review of a final administrative decision.

To ensure that mandamus remains an extraordinary form of relief and not a strategy for avoiding administrative exhaustion, plaintiffs must clearly demonstrate that they have no alternative means to obtain the relief they seek. *Mallard*, 490 U.S. at 309. Here all plaintiffs have shown is that they are unlikely to win their preferred relief at the preliminary, administrative stage of an otherwise adequate remedy.[8]

Exhaustion of administrative remedies, however, is not a strategic option, but rather a statutory requirement. Mandamus does not lie, as plaintiffs assert,

---

[8] The fact that an alternative to "busting the budget," an outcome the district court acknowledged might result from its injunction, may be worked out during the administrative process is one of the governmental interests underlying the statutory requirement for exhaustion.

merely because "the administrative process is fundamentally ill equipped to resolve this claim."

"Mandamus is an extraordinary remedy and will not lie if other remedies are available." *In re United States,* 985 F.2d 510, 511 (11th Cir. 1993). Medicare's statutory remedial scheme provides for administrative review followed by plenary judicial review. In the face of this comprehensive statutory scheme, it cannot be said that the second requirement for mandamus review – that there be no alternative avenues of relief – is met.

Both *Ringer* and *Illinois Council* make clear that the fact that an agency's administrative review, by itself, might not afford the relief claimed, does not excuse the jurisdictional requirements of presentment and exhaustion of administrative remedies. The administrative review provided by Medicare's administrative hearing officers is but the first step in a comprehensive statutory remedial scheme that fully empowers a reviewing court to consider and remedy any of the violations of law alleged by plaintiff here. In view of the controlling authority that postponement of judicial review does not amount to a preclusion of review, plaintiffs may not avail themselves of mandamus jurisdiction where there is "another means to obtain adequate review." Therefore, we hold that the district

court did not have mandamus jurisdiction and shall reverse the district court's entry of judgment under that authority.

## III.

The denial of the motion to dismiss is REVERSED and the judgment of the district court is VACATED. This case is remanded with instructions to dismiss for want of subject-matter jurisdiction.