**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PATRICIA HARO; JOHN G. BALENTINE; JACK McNUTT; TROY HALL, *Plaintiffs-Appellees*, v. KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, *Defendant-Appellant*. | No. 11-16606 D.C. No. 4:09-cv-00134-DCB ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued December 5, 2012
Submitted February 14, 2013
San Francisco, California

Filed September 4, 2013
Amended January 2, 2014

Before: Barry G. Silverman, Ronald M. Gould,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

# SUMMARY[*]

## Medicare

The panel amended an opinion filed September 4, 2013, vacated injunctions entered by the district court, and reversed the district court's summary judgment entered in favor of a nationwide class of Medicare beneficiaries in an action brought by the beneficiaries, and a named plaintiff's attorney, challenging the Secretary of Health and Human Services' practice of demanding "up front" reimbursement for secondary payments from beneficiaries who have appealed a reimbursement determination or sought a waiver of the reimbursement obligation.

The district court enjoined the Secretary from seeking up front reimbursements of Medicare secondary payments from beneficiaries who have received payment from a primary plan if they have unresolved appeals or waivers, and enjoined the Secretary from demanding that attorneys withhold settlement proceeds from their clients until after Medicare is reimbursed. The panel held that plaintiff Patricia Haro demonstrated Article III standing on behalf of the class of Medicare beneficiaries, and Haro's attorney independently demonstrated standing to raise his individual claim. However, the panel concluded that the beneficiaries failed to satisfy the channeling requirement at the administrative level, and therefore the district court lacked subject matter jurisdiction pursuant to 42 US.C. d 405(g). The panel reached the merits of the attorney's claim, but concluded that the Secretary's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

interpretation of the secondary payer provisions was reasonable. The panel remanded for consideration of the appellees' due process claim.

**COUNSEL**

Alisa B. Klein (argued) and Mark B. Stern, Attorneys; Tony West, Assistant Attorney General; Ann B. Scheel, Acting United States Attorney, United States Department of Justice, Civil Division, Washington, D.C.; William B. Schultz, Acting General Counsel; Margaret M. Dotzel, Deputy General Counsel; Janice L. Hoffman, Associate General Counsel; Carol J. Bennett, Deputy Associate General Counsel for Program Integrity; Leslie M. Stafford, Attorney, United States Department of Health and Human Services, Washington D.C., for Defendant-Appellant.

Gil Deford (argued) and Wey-Wey Kwok, Center for Medicare Advocacy, Willimantic, Connecticut, for Plaintiffs-Appellees.

Barbara Jones, AARP Foundation Litigation, Pasadena, California; Iris Y. González, AARP Foundation Litigation, Washington D.C.; Michael Schuster, AARP, Washington D.C., for Amicus Curiae AARP.

**ORDER**

The opinion filed on September 4, 2013, and appearing at 729 F.3d 993, is amended as follows:

On page 5 of the slip opinion, replace the third sentence of the first paragraph with the following language:

> But we conclude that the beneficiaries failed to satisfy the channeling requirement at the administrative level and therefore the district court lacked subject matter jurisdiction pursuant to 42 US.C. § 405(g).

On page 5 of the slip opinion, in the fifth sentence of the first paragraph, replace the word "beneficiaries' " with the word "appellees.' "

On page 10 of the slip opinion, in the second full sentence appearing on the page, replace the word "beneficiaries" with "plaintiffs."

On page 23 of the slip opinion, replace footnote 8 with the following language:

> The beneficiaries also cite, *inter alia*, *Mathews v. Diaz*, 426 US. 67 (1976), *Briggs v. Sullivan*, 886 F.2d 1132 (9th Cir. 1989), and *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984), *vacated* 469 US. 1082 (1984). But these cases pre-date *Illinois Council*, 529 US. 1 (2000).

On page 24 of the slip opinion, replace heading i with the heading "Haro's February 2, 2009 letter did not satisfy the channeling requirement."

On page 24 of the slip opinion, in the first sentence in subsection i, replace the word "presentment" with "channeling."

On pages 25 of the slip opinion, replace the last two paragraphs of subsection i with the following language:

Even if Haro's letter and subsequent inaction did afford the Secretary an "opportunity to apply, interpret, or revise" the challenged policy, Haro failed to exhaust her administrative remedies before filing suit in federal court. To exhaust her administrative remedies, a beneficiary must proceed through the five levels of administrative review: (1) the initial determination; (2) redetermination; (3) reconsideration of the redetermination; (4) an ALJ hearing; and (5) review by the Medicare Appeals Council. 42 C.F.R. § 405. Haro failed to press her claim beyond level two. Instead, less than a week after she mailed her reimbursement check to the Secretary, Haro filed suit — before any agency review of the up-front reimbursement policy.

Haro claims that the government has waived the exhaustion requirement. But we can find no unambiguous waiver of this issue

> in the record, and therefore conclude that the issue is not waived.
>
> We conclude that the channeling requirement of § 405(g) was not met. Because channeling is a jurisdictional requirement, the district court lacked subject matter jurisdiction over the beneficiaries' claim.

On page 32 of the slip opinion, replace the word "beneficiaries' " with the word "appellees.' "

An amended opinion is filed concurrently with this order.

With this amendment, Judges Silverman, Gould, and Christen vote to deny Appellant's petition for panel rehearing and rehearing en banc, filed on October 18, 2013. The full court has been advised of the petition for rehearing and rehearing en banc and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and rehearing en banc is **DENIED**. No further petitions for en banc or panel rehearing shall be permitted.

# OPINION

CHRISTEN, Circuit Judge:

Secretary of Health and Human Services Kathleen Sebelius appeals the district court's order certifying a nationwide class of Medicare beneficiaries and granting summary judgment in the beneficiaries' favor. Patricia Haro, Jack McNutt, and Troy Hall are named plaintiffs. John Balentine was Haro's lawyer in her underlying personal injury suit.

Before the district court, the beneficiaries raised two claims: (1) the Secretary's practice of demanding "up front" reimbursement for secondary payments from beneficiaries who have appealed a reimbursement determination or sought waiver of the reimbursement obligation is inconsistent with the secondary payer provisions of the Medicare statutory scheme; and (2) the Secretary's practice violates their due process rights. Balentine separately claimed the Secretary's practice of demanding that attorneys withhold settlement proceeds from beneficiary-clients until Medicare is reimbursed is also inconsistent with the secondary payer provisions.

The district court agreed with the beneficiaries. The court enjoined the Secretary from seeking up front reimbursement of Medicare secondary payments from beneficiaries who have received payment from a primary plan if they have unresolved appeals of their reimbursement calculations or unresolved requests for waiver of their reimbursement obligations. The district court also agreed with Balentine and enjoined the Secretary from demanding that attorneys withhold settlement proceeds from their clients until after

Medicare is reimbursed. The district court did not reach the beneficiaries' due process claim.

On appeal to our court, the Secretary raises three jurisdictional arguments. First, she argues that this case is not justiciable because neither the beneficiaries nor Balentine had Article III standing. Second, she argues this case is moot. Third, she argues that the district court lacked subject matter jurisdiction over all claims in the complaint. On the merits, the Secretary maintains that her interpretation of the Medicare secondary payer provisions is reasonable.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We conclude that Haro has demonstrated Article III standing on behalf of the class of Medicare beneficiaries and that Balentine has independently demonstrated standing to raise his individual claim. But we conclude that the beneficiaries failed to satisfy the channeling requirement at the administrative level and therefore the district court lacked subject matter jurisdiction pursuant to 42 US.C. § 405(g). We reach the merits of Balentine's claim, but conclude that the Secretary's interpretation of the secondary payer provisions is reasonable. We therefore vacate the district court's injunctions, reverse the district court's summary judgment order, and remand for consideration of the appellees' due process claim.

## I.  BACKGROUND

### A.  Statutory Background

Congress enacted the secondary payer provisions of the Medicare statute in 1980 to cut Medicare costs. *See Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995). Those

provisions make Medicare secondary to other sources of insurance by forbidding Medicare payments when a primary plan—for instance, group health insurance or liability insurance—is reasonably expected to make payment for the same medical care; and by providing that certain Medicare payments are conditional and must be reimbursed. 42 US.C. § 1395y(b)(2)(A), (B). Conditional payments are at issue in this case.

Medicare makes a conditional payment when a primary insurer cannot reasonably be expected to pay promptly. *Id.* § 1395y(b)(2)(B)(i). If Medicare makes a conditional payment and the beneficiary later receives payment from a primary insurer, Medicare is entitled to reimbursement. *Id.* § 1395y(b)(2)(B)(ii). Specifically, § 1395y(b)(2)(B)(ii) provides that "a primary plan [or] an entity that receives payment from a primary plan, shall reimburse" Medicare once the primary plan's responsibility has been demonstrated by a judgment or settlement. *Id.* We refer to this paragraph—§ 1395y(b)(2)(B)(ii)—as the "reimbursement provision." If Medicare is not reimbursed within 60 days after notice of the primary insurer's payment, the Secretary is entitled to charge interest on the reimbursement amount. *Id.*

The statutory scheme also creates a cause of action by which the United States may recover from a primary plan or "from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." *Id.* § 1395y(b)(2)(B)(iii). We refer to this part of the Medicare statutory scheme as the "cause of action provision." The cause of action provision allows the United States to seek reimbursement from "the beneficiary herself." *Zinman*, 67 F.3d at 844–45; *see also* 42 C.F.R. § 411.24(g) (Medicare "has a right of action to recover its payments from any entity,

including a beneficiary . . . [or] attorney . . . that has received a primary payment.").

When Medicare learns that a beneficiary has received payment from a primary plan, the Secretary makes an initial determination of the amount of reimbursement due from the beneficiary. Borrowing from the Social Security Act, the Medicare Act incorporates administrative review procedures set out in 42 US.C. § 405(b) and judicial review pursuant to 42 US.C. § 405(g). *See* 42 US.C. § 1395ff(b)(1)(A). A beneficiary may contest the amount of reimbursement or seek waiver of any reimbursement amount. *See id.* § 1395gg.

## B. Factual Background

### 1. Patricia Haro

Patricia Haro was injured in a car accident and Medicare paid for her medical treatment. Haro filed a personal injury claim against the tortfeasor, which eventually settled. Medicare, through the Medicare Secondary Payer Recovery Contractor,[1] sought reimbursement of $1,682.72 in a letter dated January 12, 2009. The letter informed Haro of her right to appeal the reimbursement determination or seek waiver but also stated that Haro "must" pay within 60 days and that interest would start to run if payment was not made in that period. The letter encouraged Haro to pay the amount in full, even if she decided to appeal or seek a waiver, in order to avoid interest charges.

---

[1] The Medicare Secondary Payer Recovery Contractor is a private contractor that collects secondary payment reimbursements on behalf of Medicare. For simplicity, this opinion refers to both entities as Medicare.

Haro disputed the reimbursement determination by letter dated January 21, 2009.  Haro's lawyer sent a second letter, on February 2, 2009.  In it, he argued that the reimbursement provision did not grant the Secretary authority to seek payment from a beneficiary within 60 days of notice of the settlement if the beneficiary had appealed the reimbursement determination.  The letter also argued that the Due Process Clause prohibits takings of property before there has been a determination of rights to that property.

Medicare reduced Haro's reimbursement amount to $696.13 by letter dated March 3, 2009.  On March 4, 2009, likely before Haro received notice of the revised reimbursement figure, Haro sent Medicare a check for $800. Haro did not seek reconsideration of Medicare's reduced reimbursement amount and instead filed this lawsuit on March 10, 2009.  Medicare reimbursed Haro $103.87 (the difference between $800 and $696.13) on April 13, 2009.

## 2.  Jack McNutt

Like Haro, Jack McNutt was injured in a car accident and Medicare paid his medical costs.  McNutt's personal injury lawsuit settled and McNutt notified Medicare of the settlement.  Medicare responded with a letter requesting reimbursement of $26,487.07.  The letter stated that McNutt was required to pay within 60 days of the receipt of the settlement proceeds and that interest would start to accrue if payment was not received within that time.  The letter also informed McNutt of his rights to appeal and seek waiver of the reimbursement obligation.  McNutt appealed the reimbursement determination.

After Medicare sent McNutt a notice of the Secretary's intent to refer the debt to the Department of Treasury, McNutt wrote a letter of "appeal," but with his letter he enclosed a check for $11,366.58, the amount he believed he owed. Medicare sent McNutt an adjusted demand. Because of McNutt's earlier payment, only $1,422.93 (including $13.36 in interest) remained outstanding. Medicare notified McNutt that his remaining reimbursement payment "should" be made within 30 days. McNutt sought reconsideration of that amount, and the Secretary acknowledged that notice of intent to refer the debt to Treasury was sent in error.[2] Medicare then reduced McNutt's total reimbursement amount again, and McNutt paid the remaining balance, plus interest. His administrative appeal was still pending at the time this appeal was filed. At the administrative level, McNutt did not challenge the Secretary's practice of demanding up front reimbursement.

### 3.  Troy Hall

Troy Hall was injured while working and Medicare paid for his injury-related medical care. After Hall settled his worker's compensation claim, he received a reimbursement demand from the Secretary. Hall appealed the Secretary's initial reimbursement calculation. Medicare reduced the reimbursement amount and determined that Hall owed nothing. At the administrative level, Hall did not object to the Secretary's practice of demanding up front reimbursement.

---

[2] The letter states that "debts pending appeal are excluded from referral to the Department of Treasury."

### 4.  John Balentine

Attorney John Balentine represented Haro in her personal injury lawsuit and during administrative proceedings.  He received a letter from Medicare similar to the letter that Haro received.  It instructed him not to disburse settlement funds to his beneficiary-client until Medicare had been reimbursed, and said he would be personally liable if he did.  Balentine declared that he routinely receives similar letters from Medicare.

## C.  District Court Proceedings

As noted above, this appeal involves two separate claims against the Secretary.  First, the beneficiaries alleged that the Secretary exceeded her authority under the Medicare secondary payer provisions by demanding payment before resolution of the plaintiffs' appeals or completion of the waiver application process.  Second, Balentine alleged that the Secretary's demand that beneficiaries' attorneys withhold settlement proceeds until Medicare is reimbursed exceeds the Secretary's statutory authority.  The beneficiaries also alleged that the Secretary's demand violated their due process rights.  Plaintiffs sought declaratory and injunctive relief.

In the district court, the Secretary moved pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction.  The Secretary argued that the beneficiaries lacked Article III standing and had not exhausted their administrative remedies as required by 42 US.C. § 405(g).  The district court concluded that Haro and McNutt had Article III standing and that, with respect to McNutt, § 405(g)'s exhaustion

requirement was properly waived.  The district court denied the motion to dismiss.

On cross-motions for summary judgment, the district court granted the named plaintiffs' motion and certified a class of beneficiaries who had been or would be subject to demands for reimbursement from the Secretary before their administrative appeals were exhausted.  Even analyzing the Secretary's practice pursuant to the deferential standard explained in *Chevron U.S.A. v. Natural Resources Defense Council*, 467 US. 837 (1984), the district court determined that the Secretary's up front reimbursement requirement was inconsistent with the appeals and waiver processes.  The district court therefore enjoined the Secretary from demanding reimbursement of secondary payments from beneficiaries prior to resolution of their administrative appeals or requests for waiver.  The district court also enjoined the Secretary from demanding that attorneys withhold liability proceeds from their clients pending reimbursement of disputed claims.

## II.  STANDARD OF REVIEW

We review a district court's determination of subject matter jurisdiction de novo.  *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012).  We also review an order granting summary judgment de novo.  *Int'l Rehabilitative Sciences, Inc. v. Sebelius*, 688 F.3d 994, 1000 (9th Cir. 2012).

# III. DISCUSSION

## A. Jurisdictional Issues

On appeal, the Secretary argues that Article III's case or controversy requirement was not met in this case because neither the beneficiaries nor Balentine had standing and because the beneficiaries' claims are moot. The Secretary also maintains that the district court lacked statutory subject matter jurisdiction. Each jurisdictional argument is addressed in turn.

### 1. Article III Standing

#### a. Beneficiaries

In order to demonstrate Article III standing, a plaintiff must show: (1) a concrete injury; (2) fairly traceable to the challenged action of the defendant; (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 US. 555, 560–61 (1992). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). "[A] plaintiff must demonstrate standing for each claim" and "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 US. 332, 352 (2006) (internal quotation marks and citation omitted). "The standing formulation for a plaintiff seeking prospective injunctive relief" generally requires that the plaintiff's concrete injury be "coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons*, 461 US. 95, 111 (1983)).

"[A] plaintiff is presumed to have constitutional standing to seek injunctive relief when [the plaintiff] is the direct object of [government] action challenged as unlawful." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011) (citing *Lujan*, 504 US. at 561–62). Here, Haro was the direct object of the Secretary's allegedly overreaching collection practice. She received a letter requesting reimbursement before her administrative appeal had run its course. We therefore start with the presumption that Haro has Article III standing, on behalf of the class, to challenge the Secretary's practice. *See Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) ("When the lawsuit at issue challenges the legality of government action, and the plaintiff has been the object of the action, then it is presumed that a judgment preventing the action will redress his injury.").

We consider whether the elements of Article III standing, as articulated in *Lujan*, were satisfied at the time the complaint was filed. *Cnty. of Riverside v. McLaughlin*, 500 US. 44, 51 (1991). When the complaint was filed, Medicare owed Haro $103.87—the difference between the $800 she sent to Medicare in response to the first demand letter and Medicare's $696.13 final reimbursement determination. Haro had been deprived of $103.87 for approximately one month[3] and had therefore suffered a modest but concrete fiscal injury that was directly traceable

---

[3] Haro claims in an affidavit that she sent the $800 payment with her request for redetermination on January 21, 2009. She repeats this contention in her brief. However, the check itself was dated March 4, 2009. Moreover, a March 4 letter from Balentine to Medicare states that an $800 check is enclosed. The complaint was filed on March 10, 2009 and Medicare's reimbursement check to Haro was dated April 13, 2009.

to the challenged action of the Secretary. The first two prongs of the *Lujan* formulation were therefore satisfied as to the beneficiaries' claim.

The third element of Article III standing is redressability. The Secretary argues that Haro is not likely to suffer the same injury again and that she therefore cannot show that injunctive relief would redress her injury. *Lyons* suggests that Haro must demonstrate that she was likely to suffer the same injury in the future, absent injunctive relief. 461 US. at 105–06 (choke-hold victim lacked standing to pursue injunctive relief against police where he was unable to demonstrate likelihood of future choke-holds). But unlike the plaintiff in *Lyons*, Haro's alleged injury was ongoing at the time the complaint was filed—she was deprived of $103.87. An injunction prohibiting the Secretary from withholding reimbursement payments until after completion of the appeals process would have redressed Haro's injury. *See McLaughlin*, 500 US. at 51 (distinguishing *Lyons*). Because we conclude that a properly framed injunction would have redressed Haro's injury, Haro has demonstrated the necessary criteria for Article III standing on behalf of the class.

### b. Balentine

Balentine is not part of the beneficiary class; he asserted an individual claim unique to his status as counsel for a Medicare beneficiary. Therefore, he must separately demonstrate Article III standing. *DaimlerChrysler*, 547 US. at 352. Because Balentine was the object of the Secretary's demand that he withhold disbursement of Haro's settlement funds, we begin with the presumption that he has standing to challenge the Secretary's action. *Los Angeles Haven Hospice*, 638 F.3d at 655 (citing *Lujan*, 504 US. at 561–62).

The demand Balentine received bears significant similarity to the demand at issue in *Los Angeles Haven Hospice*. Haven Hospice challenged a Department of Health and Human Services regulation implementing a cap on reimbursement for hospice care provided to Medicare beneficiaries. *See id.* at 649; *see also* 42 US.C. § 1395f(i)(2). Haven Hospice received a demand for repayment of the amount it had been reimbursed in excess of the statutory cap. *Los Angeles Haven Hospice*, 638 F.3d at 652. The Secretary maintained that the hospice did not have Article III standing to challenge the regulation or seek to enjoin its enforcement. *Id.* at 654. But this court, applying the *Lujan* presumption, concluded: "[T]he fact that the allegedly unlawful regulation was directly applied to Haven Hospice and exposed it to individual liability for the claimed overpayments, is sufficient to support its claim of Article III standing to pursue the declaratory and injunctive relief sought in the complaint." *Id.* at 655.

The demand letter the Secretary sent to Balentine represents direct application of the Secretary's interpretation of her authority under 42 C.F.R. § 411.24(g).[4] The letter states that "Medicare's claim must be paid up front out of settlement proceeds before any distribution occurs," and that "Medicare must be paid within 60 days of receipt of the proceeds from the third party." Because 42 C.F.R. § 411.24(g) provides that Medicare "has a right of action to

---

[4] Whether we analyze 42 C.F.R. § 411.24(g) individually, or in conjunction with 42 C.F.R. § 411.24(h) is largely academic: § 411.24(h) interprets the reimbursement provision and provides that "[i]f the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days." The Secretary's interpretation of the reimbursement provision is thus similarly broad—it encompasses attorneys who have received a primary payment.

recover its payments from any entity, including a[n] . . . attorney . . . that has received a primary payment," the regulation subjects Balentine to individual liability. Consistent with *Los Angeles Haven Hospice*, Balentine has demonstrated Article III standing. 638 F.3d at 655.

### 2. Mootness

The Secretary next argues that the claims asserted in the complaint are moot.[5] A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 US. 486, 496 (1969) (citation omitted). It is undisputed that Haro did not challenge Medicare's final reimbursement calculation and is not owed any additional refund. But the district court concluded, and the beneficiaries maintain, that the "capable of repetition, yet evading review" exception to mootness applies to their claim. *See, e.g.*, *Padilla v. Lever*, 463 F.3d 1046, 1049 (9th Cir. 2006) (en banc) (quoting *Roe v. Wade*, 410 US. 113, 125 (1973)).

In *Sosna v. Iowa*, 419 US. 393, 401 (1975), the Supreme Court held that mootness of a named plaintiff's claim after class certification does not moot the action. After incremental extension of *Sosna*,[6] the Supreme Court held that whether class certification occurs before or after a named

---

[5] Because we conclude, *infra*, that Haro is the only plaintiff who arguably presented a challenge to the practice of requiring up front reimbursement at the administrative level, we limit our analysis of the Secretary's mootness argument to Haro's claim.

[6] For a comprehensive summary of this case law, see *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086–90 (9th Cir. 2011).

plaintiff's claim becomes moot is immaterial. *McLaughlin*, 500 US. at 52 ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction."). The Court stated that where a claim is "so inherently transitory that the trial court will not have . . . enough time to rule on a motion for class certification before the proposed representative's individual interest expires . . . the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *Id.* (citations omitted).

Here, Haro's claim expired before the district court certified the class. Her individual interest in injunctive relief expired once she was fully reimbursed—approximately one month after she filed this lawsuit—but the district court could not have been expected to rule on a motion for class certification in that period. Pursuant to the rule in *Sosna* and *McLaughlin*, expiration of Haro's personal stake in injunctive relief did not moot the beneficiaries' claim for injunctive relief. We conclude that the beneficiaries' claim for injunctive relief is not moot, and that Article III's justiciability requirements are satisfied.[7]

---

[7] The Secretary argues that her current practice—under which debts that have been appealed are not referred to the Department of Treasury for collections—mooted the beneficiaries' claim. But this misapprehends the nature of the beneficiaries' claim. Whether the claims are referred for collection or not, plaintiffs object to the demand for up front reimbursement. To the extent a current policy *could* have mooted the beneficiaries' claim, the voluntary cessation exception applies. *See Friends of the Earth v. Laidlaw*, 528 US. 167, 189 (2000) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)).

### 3.  Statutory Subject Matter Jurisdiction

The Secretary maintains that the district court did not have subject matter jurisdiction.  The complaint alleged federal question jurisdiction under 28 US.C. § 1331 and, alternatively, jurisdiction under 42 US.C. § 1395ff(b)(1)(A). The latter statute is a provision in the Medicare scheme that incorporates 42 US.C. § 405(g), the statute that establishes federal jurisdiction to review final decisions of the Commissioner of Social Security.  The district court determined that it had subject matter jurisdiction pursuant to § 405(g).

### a.  The beneficiaries' claim

Federal question jurisdiction does not extend to most claims arising under the Medicare Act.  The Medicare Act incorporates 42 US.C. § 405(h), which provides:

> No findings of fact or decision of the [Secretary] . . . shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the [Secretary] . . . , or any officer or employee thereof shall be brought under section 1331 . . . of title 28 to recover on any claim arising under this subchapter.

42 US.C. § 405(h); 42 US.C. § 1395ii.

The series of cases interpreting § 405(h) makes clear that it precludes federal question jurisdiction in this case.  First, in *Weinberger v. Salfi*, 422 US. 749, 760–61 (1975), the Supreme Court ruled that a claim "arises under" the Social

Security Act, for purposes of § 405(h), if the Social Security Act "provides both the standing and the substantive basis for the presentation of" the claim. *Salfi* held that a due process and equal protection challenge to duration-of-relationship provisions of the Social Security Act could not proceed under § 1331. *Id.* at 761.

The Supreme Court extended *Salfi* to the Medicare Act in *Heckler v. Ringer*, 466 US. 602, 614 (1984). There, the Court ruled that there was no federal question jurisdiction to consider a challenge to a procedure for determining Medicare benefits. The Court described the procedural claim as "inextricably intertwined" with the substantive claim for benefits, *id.*, but the Court rejected the proposition that application of § 405(h) depends on whether a claim is "procedural" rather than "substantive," *id.* at 615.

Finally, in *Shahala v. Illinois Council on Long Term Care, Inc.*, the Supreme Court explained that the broad purpose of § 405(h) is to ensure that claims are channeled so that the agency has the first opportunity to revise its own policies:

> [T]he bar of § 405(h) reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'— doctrines that in any event normally require channeling a legal challenge through the agency. . . . [*I*]*t demands the 'channeling' of virtually all legal attacks through the agency* [*and*] *assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual*

> *courts applying 'ripeness' and 'exhaustion' exceptions case by case.*

529 US. 1, 12–13 (2000) (emphasis added) (citation omitted). *Illinois Council* continued, "[t]he fact that the agency might not provide a hearing for [any] particular contention, or may lack the power to provide one . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency." *Id.* at 23 (emphasis omitted) (citations omitted).

Here, the beneficiaries and Balentine maintain that the Secretary's interpretation of the secondary payer provisions is unlawful and that the Secretary's application of the statute's enabling regulations injured them. Because the secondary payer provisions of the Medicare Act provide the standing and the substantive basis for the beneficiaries' claim, § 405(h) precludes original jurisdiction under § 1331. *See Salfi*, 422 US. at 760–61; *see also Fanning v. United States*, 346 F.3d 386, 392, 399–400 (3d Cir. 2003) (district court did not have federal question jurisdiction over "class action complaint seeking to enjoin the government's attempt to obtain reimbursement of Medicare overpayments pursuant to the secondary payer provisions"). Pursuant to § 405(h), we conclude the beneficiaries' claim is subject to the requirement that it be administratively channeled.

Because the beneficiaries were required to satisfy the presentment and exhaustion requirements under § 405(g) prior to seeking judicial relief, we must first determine whether Haro fairly presented her claim at the administrative level. *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1115 (9th Cir. 2003). Exhaustion is waivable, presentment is not. *Id.* (citing *Mathews v. Eldridge*, 424 US. 319, 328 (1976)). Only

presentment is "purely jurisdictional." *Eldridge*, 424 US. at 328 (internal quotation marks omitted).

The Secretary maintains that § 405(g)'s jurisdictional presentment requirement was not met because none of the named plaintiffs presented to the agency the claim that the Secretary lacks authority to demand up front reimbursement. The beneficiaries rely heavily on *Eldridge* to argue that a final decision from the Secretary with respect to a claim for benefits entitles a beneficiary to raise any policy challenge in federal court, ostensibly on review of the Secretary's final benefits decision. We conclude the beneficiaries' position is inconsistent with the purpose of the channeling requirement in § 405(h) as explained by the Supreme Court in *Illinois Council*.

*Eldridge* involved a Social Security beneficiary who, after responding to a questionnaire, received notice that a state agency monitoring his status had tentatively concluded he was no longer disabled. *Id.* at 323–24. Eldridge disputed one of the reports relied upon by the agency but otherwise stated that the agency had enough evidence of his disability. *Id.* at 324. The Social Security Administration accepted the agency's determination and terminated Eldridge's benefits. *Id.* Eldridge did not request reconsideration of the administration's termination of his benefits before filing a lawsuit and arguing that due process required that he be given a pretermination evidentiary hearing. *Id.* at 324–25.

Analyzing the district court's jurisdiction to adjudicate Eldridge's claim, the Supreme Court ruled that "[t]hrough his answers to the state agency questionnaire, and his letter in response to the tentative determination that his disability had ceased, [Eldridge] *specifically presented the claim that his*

*benefits should not be terminated because he was still disabled.*" *Id.* at 329 (emphasis added). The Court continued, "[t]he fact that Eldridge failed to raise with the Secretary his constitutional claim to a pretermination hearing is not controlling[,] . . . § 405(g) requires only that there be a 'final decision' by the Secretary with respect to the claim of entitlement to benefits." *Id.* Consequently, the Court concluded that "the nonwaivable jurisdictional element [of § 405(g)] was satisfied." *Id.* at 330.

The beneficiaries maintain that *Eldridge* stands for the broad proposition that § 405(g)'s presentment requirement is satisfied once a beneficiary has raised a claim for benefits. In their view, a final decision on a claim for benefits permits a beneficiary to raise *any* separate claim pertaining to the agency's procedure or policy in federal court. We disagree. In our view, the beneficiaries' reading of *Eldridge* is overly broad.

The purpose of the channeling requirement is to "assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions." *Illinois Council*, 529 US. at 13. This purpose would not be fulfilled if plaintiffs proceeding through the administrative channel were permitted to raise claims in federal court that were not raised before the agency. *See Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1298 (11th Cir. 2004) (describing administrative review as "the first step in a comprehensive statutory remedial scheme that fully empowers a reviewing court to consider and remedy any of the violations of law alleged by [a] plaintiff").

Moreover, the beneficiaries' interpretation of the presentment requirement is fundamentally inconsistent with the general rule that "[o]nce federal subject matter jurisdiction is established over the underlying case between [plaintiff] and [defendant], the jurisdictional propriety of each additional claim is to be assessed individually." *Caterpillar Inc. v. Lewis*, 519 US. 61, 66 n.1 (1996) (quoting 3 James Moore, *Moore's Federal Practice* ¶ 14.26, 14-116 (2d ed. 1996)). In *Eldridge*, the general rule described in *Caterpillar* was not contravened because the plaintiff's argument that he was entitled to a pretermination evidentiary hearing had direct bearing on the termination of his benefits. Notably, this case does not involve a "claim for benefits" because the beneficiaries do not challenge Medicare's reimbursement calculations. They challenge the Secretary's policy of demanding up front reimbursement, a policy that has no bearing on the reimbursement calculations questioned by the beneficiaries at the administrative level.[8]

Finally, *Illinois Council*, a case decided twenty-four years after *Eldridge*, persuades us that the beneficiaries' interpretation of *Eldridge* is too expansive. In *Illinois Council*, the Supreme Court addressed a case bearing directly on challenges to Medicare regulations and made clear that the type of policy challenge at issue in this case *is* subject to the channeling requirement of § 405(h), and to the presentment requirement in § 405(g). *Illinois Council*, 529 US. at 14 ("Nor can we accept a distinction that limits the scope of § 405(h) to claims for monetary benefits.").

---

[8] The beneficiaries also cite, *inter alia*, *Mathews v. Diaz*, 426 US. 67 (1976), *Briggs v. Sullivan*, 886 F.2d 1132 (9th Cir. 1989), and *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984), *vacated* 469 US. 1082 (1984). But these cases pre-date *Illinois Council*, 529 US. 1 (2000).

We decline to adopt the extraordinarily broad reading of *Eldridge* that the beneficiaries invite. We conclude that the named plaintiffs' reimbursement disputes did not provide an opportunity for the Secretary to consider the claim that her interpretation of the secondary payer provisions exceeded her authority. Their requests for redetermination of their respective amounts of reimbursement did not constitute presentment of their policy challenge.

### i. Haro's February 2, 2009 letter did not satisfy the channeling requirement.

The beneficiaries rely solely on presentation of their reimbursement disputes as evidence that they fulfilled § 405(g)'s channeling requirement, but we consider whether the requirement was otherwise satisfied. In the course of exchanging correspondence regarding the amount of reimbursement they each owed, only Haro made mention of the argument that the Secretary exceeded her authority under the Medicare secondary payer provisions by seeking up front reimbursement.

Haro requested redetermination of the amount of her reimbursement obligation by letter dated January 21, 2009, but her letter did not challenge the Secretary's authority to demand "up front" reimbursement. Haro did make a brief objection to the Secretary's reimbursement practice in a follow-up letter dated February 2, 2009. But subsequent correspondence between Haro and the Secretary memorializes that both parties ignored Haro's objection. The correspondence shows that Haro sent payment in response to the Secretary's initial demand. Medicare then reduced its reimbursement demand, determined that Haro had overpaid, and refunded $103.87 to Haro. With its refund, Medicare

gave Haro notice that it was closing its file. Haro did not object to the Secretary closing her file, signaling that the parties had resolved their dispute. Approximately one month passed between the time Haro sent her February 2, 2009 follow-up letter and the time the Secretary sent a letter reducing the reimbursement amount. Approximately one additional month passed before Haro was reimbursed for her overpayment. The record does not show that either of the parties ever followed up on Haro's objection to the Secretary's practice, and neither McNutt nor Hall ever objected to the Secretary's authority to demand up front reimbursement.

Even if Haro's letter and subsequent inaction did afford the Secretary an "opportunity to apply, interpret, or revise" the challenged policy, Haro failed to exhaust her administrative remedies before filing suit in federal court. To exhaust her administrative remedies, a beneficiary must proceed through the five levels of administrative review: (1) the initial determination; (2) redetermination; (3) reconsideration of the redetermination; (4) an ALJ hearing; and (5) review by the Medicare Appeals Council. 42 C.F.R. § 405. Haro failed to press her claim beyond level two. Instead, less than a week after she mailed her reimbursement check to the Secretary, Haro filed suit — before any agency review of the up-front reimbursement policy.

Haro claims that the government has waived the exhaustion requirement. But we can find no unambiguous waiver of this issue in the record, and therefore conclude that the issue is not waived.

We conclude that the channeling requirement of § 405(g) was not met. Because channeling is a jurisdictional

requirement, the district court lacked subject matter jurisdiction over the beneficiaries' claim.

### b. Balentine's claim is excepted from the channeling requirement.

Attorney Balentine brings a separate claim unique to his status as an attorney for a Medicare beneficiary. As such, we must separately consider whether the district court had jurisdiction to adjudicate his claim.

Between *Ringer* and *Illinois Council*, the Supreme Court decided *Bowen v. Michigan Academy of Family Physicians*, 476 US. 667 (1986). *Michigan Academy* appeared to limit the scope of the channeling requirement in § 405(h) to quantitative, benefit-amount determinations. *See id.* at 680–81. But in *Illinois Council* the Supreme Court clarified that "it is more plausible to read *Michigan Academy* as holding that § 1395ii [the provision of the Medicare statute that incorporates § 405(h) into the Medicare Act] does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 US. at 19.

Because Balentine is not a Medicare beneficiary, he did not have the opportunity to present his challenge through the same administrative channel as the beneficiaries.[9]  We are

---

[9] Subpart I of 42 C.F.R. § 405 describes the five levels of administrative review. A beneficiary first receives an initial determination. 42 C.F.R. § 405.924(b). If the beneficiary is dissatisfied, the beneficiary may request redetermination, *id.* § 405.940, reconsideration of the redetermination, *id.* §§ 405.960–.978, an ALJ hearing, *id.* §§ 405.1000–.1054, and review by the Medicare Appeals Council, *id.* §§ 405.1100–.1140. Because Balentine is not a beneficiary, he would not

unaware of any other path to administrative review of the policy that Balentine challenges, and the parties cite none. Therefore, because applying § 405(h)'s channeling requirement would mean no review of Balentine's individual claim, the claim falls within the very narrow *Michigan Academy* exception, *see id.*, and the district court had federal question jurisdiction under § 1331 to adjudicate it.

## B.  The Secretary's interpretation of the reimbursement provision is reasonable.

Having determined that the district court lacked subject matter jurisdiction over the beneficiaries' claim, but that it had jurisdiction to adjudicate Balentine's claim under § 1331, we turn to the merits of the Secretary's appeal of the district court's second injunction.

The district court concluded that the Secretary's practice of demanding that attorneys withhold client funds was inconsistent with the secondary payer provisions.   The reimbursement provision states that "an entity that receives payment from a primary plan, *shall reimburse* [Medicare] for any [secondary payment] if it is demonstrated that such primary plan . . . had a responsibility to make [a primary] payment," 42 US.C. § 1395y(b)(2)(B)(ii) (emphasis added), but it does not define "entity."

The Secretary has interpreted "entity that receives payment from a primary plan" in accordance with the statute's enabling regulations.   42 C.F.R. § 411.24(g) provides that the Secretary "has a right of action to recover its

receive an initial determination of a reimbursement amount directed at him.

payments from any entity, including a beneficiary . . . *[or] attorney* . . . that has received a primary payment." (emphasis added). And 42 C.F.R. § 411.24(h) states that "[i]f the beneficiary *or other party* receives a primary payment, the beneficiary *or other party* must reimburse Medicare within 60 days." We review the Secretary's interpretation of the statute pursuant to the deferential *Chevron* standard. *Zinman*, 67 F.3d at 843–44.

### 1. Application of *Chevron*

The first step under *Chevron* is to determine "whether Congress has directly spoken to the precise question at issue." 467 US. at 842. The reimbursement provision does not specify whether an attorney who receives settlement proceeds constitutes "an entity that receives payment from a primary plan," and therefore Congress has not spoken to the precise issue.

"[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. If the Secretary's construction is "rational and consistent with the statute, it is a permissible construction" and will be upheld. *Zinman*, 67 F.3d at 845 (internal quotation marks omitted). We therefore consider whether the Secretary's construction of the reimbursement provision is rational and consistent with the statute.

> **a. There is no statutory basis to distinguish between entities that receive payment from a primary plan and end-point recipients.**

An attorney who receives settlement proceeds, even as an intermediary, has "receive[d] payment from a primary plan" in a literal sense; the Secretary's interpretation of the statute is rational in this regard. But the district court concluded that there is nothing in the secondary payer provisions supporting an action against attorneys, "except to the extent they are end-point recipients of settlement proceeds." From this, we understand that the district court drew a distinction between fees earned and retained by an attorney representing a Medicare beneficiary, and funds deposited into an attorney's trust account to be held in trust on behalf of the attorney's beneficiary-client. But the relevant statutory text broadly states that "an entity that receives payment from a primary plan[] shall reimburse" Medicare; it does not distinguish between a recipient of payment from a primary plan and an "end-point recipient" of such payment. 42 US.C. § 1395y(b)(2)(B)(ii). We find nothing in the statutory language to persuade us that the obligation to reimburse Medicare is limited to "end-point" recipients.

### b. The 2003 amendments indicate that Congress intended a broad construction of "entity that receives payment from a primary plan."

Before 2003, the cause of action provision stated that "the United States may bring an action against any entity which is required . . . to [make a primary payment] or against any other entity (including any physician or provider) that has received payment from that entity." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 906 (11th Cir. 2003) (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)).[10] Analyzing the previous

---

[10] Before 2003, the cause of action provision was codified at 42 US.C. § 1395y(b)(2)(B)(ii), which now codifies the reimbursement provision.

version of the statute, the *Baxter* court applied the doctrine of ejusdem generis to conclude that "Congress intended the term 'any other entity' to be understood with reference to 'physician' and 'provider,' and to encompass only entities of like kind." *Id.* at 906. But in the wake of *Baxter*, Congress amended the statute to eliminate its reference to "physician" and "provider." The amended statute now states that the United States may recover, without limitation, "from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." 42 U.S.C. § 1395y(b)(2)(B)(iii). The amended cause of action provision indicates that Congress intended a more expansive construction of "entity that has received payment from a primary plan" than the one described in *Baxter*. Because the reimbursement provision uses identical language to the amended cause of action provision, the 2003 amendments support the Secretary's position that her construction of the reimbursement provision is consistent with congressional intent. *See Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1127 (9th Cir. 2010) ("identical words used in different part of the same act are intended to have the same meaning" (quoting *Comm'r v. Lundy*, 516 US. 235, 250 (1996)).

### c. The Secretary's interpretation is consistent with the purpose of the secondary payer provisions.

"The transformation of Medicare from the primary payer to the secondary payer with a right of reimbursement reflects the overarching statutory purpose of reducing Medicare costs." *Zinman*, 67 F.3d at 845. The Secretary's demand that attorneys who have received settlement proceeds reimburse Medicare before disbursing those proceeds to their clients

certainly increases the likelihood that proceeds will be available for reimbursement. Therefore, the Secretary's interpretation of the reimbursement provision is consistent with the general purpose of the secondary payer provisions.

> **d. Whether the Secretary can recover from an attorney who has already disbursed settlement proceeds does not bear on the merits of the injunction.**

Balentine maintains that the secondary payer provisions do not create a lien against the settlement proceeds. Therefore, he argues, the Secretary may not recover from an attorney who has already disbursed settlement proceeds. The district court agreed and ruled that the Secretary does not have a right of action against attorneys who have already disbursed settlement proceeds. But that issue is not presented on the facts of this case. The Secretary was fully reimbursed and Balentine was not sued after disbursing Haro's settlement proceeds. The complaint alleges only that the Secretary's demand that attorneys withhold funds from their clients exceeds her authority under the secondary payer provisions. The Secretary's authority to bring an action against an attorney who has disbursed the proceeds is not a controversy ripe for our review.

We conclude the Secretary's interpretation of the reimbursement provision is rational and consistent with the statute's text, history, and purpose, therefore it is reasonable and the district court's second injunction and its order on summary judgment must be reversed.

## IV.  CONCLUSION

The district court lacked subject matter jurisdiction over the beneficiaries' claims.  The Secretary's interpretation of 42 U.S.C. §§ 1395y(b)(2)(B)(ii) and (iii) is reasonable.  We therefore **VACATE** the injunctions entered by the district court and **REVERSE** the district court's summary judgment order.  We **REMAND** this case to the district court for consideration of the appellees' due process claim.