21-1622-cv
Dynasty Healthcare, LLC v. Nat'l Gov't Services, Inc.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2021

(Argued: June 8, 2022          Decided: July 7, 2023 )

Docket No. 21-1622-cv

_____

RETINA GROUP OF NEW ENGLAND, P.C.,

*Plaintiff*,

v.

DYNASTY HEALTHCARE, LLC,

*Defendant-Cross-Defendant-Third-Party Plaintiff-Appellant*,

ADMINISTRATIVE ADVANTAGE, LLC,

*Defendant-Cross-Claimant*,

v.

NATIONAL GOVERNMENT SERVICES, INC.,

*Third-Party Defendant-Appellee*.*

_____

Before:

POOLER, LOHIER, and NARDINI, *Circuit Judges*.

---

* The Clerk of Court is directed to amend the caption as set forth above.

Third-Party Plaintiff-Appellant Dynasty Healthcare, LLC, a medical billing firm, claims that a Medicare Administrative Contractor ("MAC") negligently processed and misclassified the enrollment and payment application of one of Dynasty's clients, a medical services supplier, and that, as a result, the client was underpaid for providing Medicare services. When the client sued Dynasty for the error, Dynasty in turn sued the MAC, blaming it for the error. The United States District Court for the District of Connecticut (Shea, J.) dismissed Dynasty's claims for lack of subject matter jurisdiction because Dynasty failed to pursue administrative channels through the United States Department of Health and Human Services before seeking judicial review. In this interlocutory appeal, we decide two questions: First, whether Dynasty's claims "arise under" the Medicare Act, 42 U.S.C. § 1395 et seq., such that the administrative channeling requirement set forth in 42 U.S.C. § 405(h) applies; and second, if so, whether the District Court nonetheless had jurisdiction under 28 U.S.C. § 1331 based on a narrow exception to the Medicare Act's jurisdiction stripping provision recognized in Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 19 (2000). We conclude that the claims arise under the Medicare Act and that the exception does not apply to these claims. **AFFIRMED.**

BEVERLY KNAPP ANDERSON, Neubert, Pepe & Monteith, P.C., Hartford, CT, *for Defendant-Cross-Defendant-Third-Party Plaintiff-Appellant* Dynasty Healthcare, LLC.

DAVID L. PETERS, Attorney, Appellate Staff (Courtney L. Dixon, Abby C. Wright, *on the brief*), *for* Brian M. Boynton, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, DC, and Leonard C. Boyle, Acting United States Attorney for the District of Connecticut, Bridgeport, CT, *for Third-Party Defendant-Appellee* National Government Services, Inc.

LOHIER, *Circuit Judge*:

Congress passed the Medicare Act and created the Medicare health-insurance program to provide federally funded health insurance for elderly and disabled Americans. See Title XVIII of the Social Security Act, 79 Stat. 291, 42 U.S.C. § 1395 et seq. Dynasty Healthcare, LLC, a medical billing firm, handled Medicare-related administrative tasks for Retina Group of New England, P.C., a medical services supplier, from 2015 to 2018. Among other things, Dynasty was hired to prepare and submit Retina's application to enroll in the Medicare program as a "participating supplier." As Dynasty discovered in 2019, however, Retina was instead enrolled as a "nonparticipating supplier," which meant it was reimbursed at a lower rate. As a result, Retina was underpaid for several years. Retina sued Dynasty, blaming it for the error. Dynasty in turn sued National Government Services, Inc. ("NGS"), the Medicare Administrative Contractor ("MAC"), for mishandling Retina's application and causing the error.

The United States District Court for the District of Connecticut (Shea, J.) concluded that the Medicare Act's channeling provision applied to Dynasty's claims against NGS because the claims arose under the Medicare Act. The

3

District Court determined that it lacked subject matter jurisdiction over Dynasty's suit because Dynasty had not exhausted its administrative remedies, and it dismissed the third-party complaint. We agree with the District Court that it lacks subject matter jurisdiction and therefore AFFIRM.

**BACKGROUND**

## I. The Statutory Scheme

Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency housed in the United States Department of Health and Human Services ("HHS"). The Government outsources the administration of Medicare benefits to contractors – MACs like NGS – which process claims and administer benefits in geographic regions assigned by HHS. See 42 U.S.C. § 1395u. Among other tasks, MACs process Medicare enrollment applications for providers and suppliers, determine the amount of Medicare payments to be made for covered services, make payments on claims, and seek offsets or recoupments if a provider or supplier was overpaid. See 42 U.S.C. §§ 1395kk-1(a)(1), (4), 1395u(a); 42 C.F.R. §§ 405.371(a)(3), 405.373, 421.400 et seq.

4

Providers are paid differently depending on whether they are enrolled as "participating" or "nonparticipating." A participating provider is one who agrees to "accept payment . . . on an assignment-related basis for all items and services furnished to" Medicare beneficiaries and agrees to accept the Medicare-allowed amount as full payment. 42 U.S.C. § 1395u(h)(1). While nonparticipating providers enroll in Medicare, they do not agree to take payment on an assignment-related basis in all cases. As a result, they do not necessarily accept the Medicare-allowed amount as full payment. See 42 C.F.R. § 424.55. Nonparticipating providers may thus charge Medicare beneficiaries up to fifteen percent above Medicare's fee schedule, see id. § 414.48, but their fee schedule payments are five percent lower than those for participating providers, id. § 414.20(b).

To enroll as a "participating" provider, a company must submit CMS Form 460 to the MAC within 90 days of enrollment. By submitting the form, the company certifies that it will accept Medicare payment on an assignment-related basis for all items and services furnished to certain individuals enrolled in the Medicare program during the calendar year. See id. § 424.510.

5

The Medicare Act provides a comprehensive system of review over decisions made by the MACs. The system of review applies to "any claims in which 'both the standing and the substantive basis for the presentation' of the claims is" the Medicare Act and any claims that are "inextricably intertwined with what . . . is in essence a claim for benefits." Heckler v. Ringer, 466 U.S. 602, 615, 624 (1984) (quoting Weinberger v. Salfi, 422 U.S. 749, 760–61 (1975)); see also Avon Nursing & Rehab. v. Becerra, 995 F.3d 305, 309 (2d Cir. 2021). Claimants are entitled to a hearing before an Administrative Law Judge ("ALJ") and, upon exhaustion of administrative remedies, to judicial review of the ALJ's determination. See 42 U.S.C. §§ 405(g)-(h), 1395ff(b)(1)(A) (applying § 405(g)-(h) to the Medicare Act); 42 C.F.R. § 405.900 et seq. As relevant here, for example, a provider could seek administrative review of a MAC's determination that the provider was overpaid, see 42 C.F.R. § 405.379(b)(1)(ii), or a MAC's "initial determination to deny" its application to enroll in the Medicare program, id. § 405.803(a); see also id. §§ 498.5, 498.22(b), 498.40, 498.80. Judicial review is available after the agency issues a "final decision." 42 U.S.C. § 405(g); see id. § 1395cc(h)(1).

The Medicare Act also adopts an important limitation to judicial review in the form of the jurisdiction-stripping provision of the Social Security Act, 42 U.S.C. § 405(h). See id. § 1395ii. Under that provision, as it applies to the Medicare Act,

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 [providing for jurisdiction over federal questions and where the United States is a defendant, respectively] to recover on any claim arising under [the Medicare Act].

This means that "§ 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for 'all claim[s] arising under' the Medicare Act," Heckler, 466 U.S. at 614–15, unless "application of § 405(h) . . . would mean no review at all," Shalala v. Illinois Council on Long Term Care, Inc. ("Illinois Council"), 529 U.S. 1, 19 (2000).

## II.  Factual Background

Dynasty is a healthcare billing and consulting firm that provides administrative, billing, financial reporting, and consulting services. On July

21, 2015, Dynasty and Retina entered into a "Services Agreement," under which Retina agreed that Dynasty would provide those services in connection with Retina's medical practice. As part of the agreement, Dynasty filed the initial Medicare enrollment application on Retina's behalf. Although the application provided "the necessary forms and information" required to enroll Retina as a "participating provider[] in the Medicare system," Joint App'x 86, NGS, the MAC in this case, mistakenly enrolled Retina as a "nonparticipating" provider within the Medicare system.

NGS sent a letter dated October 16, 2015, which attempted to notify Dynasty that Retina had been enrolled as a nonparticipating provider and that Dynasty could seek reconsideration of the enrollment determination within 60 days of the letter's postmark date. Unfortunately, NGS used the wrong zip code, so Dynasty never received the letter. Indeed, at no point between October 2015 and December 31, 2018, did NGS notify Dynasty that Retina had been classified as a nonparticipating provider or that NGS processed some of Retina's claims at the lower nonparticipating provider rate. As a result of the ongoing error, Retina was finally classified as a "nonparticipating" provider.

8

For reasons that are not altogether clear from the record, NGS sometimes processed Retina's claims at the participating provider rate and sometimes processed its claims at the lower nonparticipating provider rate. According to Dynasty and Retina, the correct rate was the participating provider rate, not the nonparticipating provider rate reflected in NGS's documentation of Retina's enrollment status. But even when it applied the participating provider rate, NGS failed to tell Dynasty or Retina that the payments were in conflict with how Retina had been classified.

Dynasty stopped representing Retina on January 1, 2019 and assigned its contractual rights and obligations to Administrative Advantage, LLC, the other defendant in the underlying lawsuit. The following year, when NGS realized that Retina had sometimes been paid at the higher participating provider rate, it "obtained or made recoupments and/or offsets and/or suspensions of payments as to [Retina]." Joint App'x 88. NGS's alleged error in enrolling Retina as a nonparticipating rather than as a participating provider was finally discovered after NGS sent a letter dated April 19, 2019 to Dynasty confirming that a request to update Retina's principal business address had been approved, effective January 1, 2019. The April 19, 2019

9

letter, which Dynasty and/or Administrative Advantage forwarded to Retina, alerted Retina for the first time that it was classified as a "nonparticipating supplier" in the Medicare system.

In December 2019 Retina sued Dynasty and Administrative Advantage in Connecticut state court. It sued Dynasty for breach of contract, negligence, fraud, negligent misrepresentation, violations of the Connecticut Unfair Trade Practices Act, and breach of fiduciary duty, and it sued Administrative Advantage for breach of contract, negligence, and breach of fiduciary duty. On March 18, 2020, after Administrative Advantage removed the case to federal court, Dynasty filed a third-party complaint against NGS seeking indemnification and apportionment.[1] Dynasty's third-party complaint also included claims for indemnification and apportionment against the United States under the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680 et seq. Dynasty then filed a motion to join or substitute the United States as a third-party defendant for the claims arising under the FTCA. NGS and the Government moved to dismiss Dynasty's third-party complaint for lack of

---

[1] Dynasty amended its complaint against NGS on June 17, 2020. The amended third-party complaint is the operative complaint on appeal.

subject matter jurisdiction because it had sidestepped the Medicare Act's administrative review scheme. They also opposed Dynasty's motion to join the United States.

The District Court agreed that it lacked subject matter jurisdiction over Dynasty's third-party claims because they arose under the Medicare Act and Dynasty had failed to exhaust available administrative remedies prior to seeking judicial review as required by Sections 405(g) and (h) of the Medicare Act. The District Court also concluded that Dynasty failed to show that it was entitled to the narrow Illinois Council exception to Section 405(h)'s requirement that a claimant pursue administrative review. For those reasons, the District Court dismissed Dynasty's third-party complaint under Federal Rule of Civil Procedure 12(b)(1) and denied Dynasty's motion to join and serve the United States as moot.

Recognizing that this case presents unresolved questions in our Circuit, the District Court certified its decision for interlocutory appeal under 28 U.S.C. § 1292(b). We granted Dynasty's petition to appeal on July 1, 2021.

# DISCUSSION

This case requires that we answer two questions. The first is whether Dynasty's suit "arises under" the Medicare Act such that Section 405(h)'s administrative channeling requirement applies. If it does, the second question is whether a narrow exception to the channeling provision, derived from the Supreme Court's decision in Illinois Council, applies. No one disputes that Dynasty failed to pursue administrative channels. If we conclude that the claims arise under the Medicare Act and the Illinois Council exception is inapplicable, Dynasty loses; it can avail itself of our jurisdiction only if we answer both of the questions in its favor.[2]

---

[2] Although we consider only these two questions under the circumstances of this case, we agree with the Ninth Circuit that "assessing whether a court has subject matter jurisdiction to hear a claim related to Medicare" typically "requires a three-step analysis." Sensory Neurostimulation, Inc. v. Azar, 977 F.3d 969, 976 (9th Cir. 2020). Specifically:

> 1. In the first step, the court must decide whether the claim "arises under" Medicare such that § 405(h)'s administrative channeling requirement applies. If it does not, the plaintiff may proceed in court. If it does, the court moves on to the second step.
>
> 2. In the second step, the court must decide whether the plaintiff has satisfied the channeling requirements by properly presenting the claim and exhausting the

Because the District Court dismissed the suit for lack of subject-matter jurisdiction, we review its factual findings for clear error and its legal conclusions de novo.  See Avon Nursing, 995 F.3d at 310–11.

### I. "Arising Under" The Medicare Act

We start with the language of Section 405(h): "No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under" the Medicare Act.  42 U.S.C. § 405(h).  We must construe the "arising under" language "quite broadly" to include "any claims in which 'both the standing and the substantive basis for the presentation' of the claims is" the

---

appropriate administrative channel.  If the plaintiff has done so, or alternatively, has satisfied the requirements for judicial waiver of the exhaustion requirement, the plaintiff may proceed in court.  If the plaintiff has not, the court moves on to the third and final step.

3. In this last step, the court must decide whether the administrative channeling requirement would mean that there would be "no review at all" of the plaintiff's claim. If it would, the plaintiff may proceed in court under 28 U.S.C. § 1331 or some other jurisdictional predicate.  If not, the plaintiff's claim cannot proceed and must be dismissed for lack of subject matter jurisdiction.

Id.  In this case, of course, we see no need to address the second step because Dynasty declined to pursue administrative channels.

13

Medicare Act and any claims that are "inextricably intertwined with what . . . is in essence a claim for benefits." Heckler, 466 U.S. at 615, 624 (quoting Weinberger, 422 U.S. at 760–61). Section 405(h) mandates the "channeling of virtually all legal attacks through the agency." Illinois Council, 529 U.S. at 13 (quotation marks omitted, emphasis added); see also Puerto Rican Ass'n of Physical Med. & Rehab., Inc. v. United States, 521 F.3d 46, 48 (1st Cir. 2008). Because the channeling provision is broader than the kinds of claims that can be brought under the Act, see Avon Nursing, 995 F.3d at 313 n.3, this principle holds even if the agency cannot "fully resolve" the set of claims, Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1115 n.4 (9th Cir. 2003).

Dynasty contends that its lawsuit does not arise under the Medicare Act and that it was entitled to bypass administrative channels because its claims arise under state law rather than the Act and because at least some of the relief it seeks does not call for NGS or the Government to pay damages. We disagree and conclude that Dynasty's claims arise under the Act for the reasons that follow.

The crux of Dynasty's claim is that NGS, the MAC, incorrectly enrolled Retina in the Medicare program and thus incorrectly reimbursed Retina and

14

wrongfully recouped alleged Medicare overpayments. Dynasty seeks (1) monetary damages in indemnification of damages owed to Retina (for the alleged Medicare underpayments and wrongful recoupments); (2) apportionment of damages alleged by Retina; (3) attorneys' fees and costs related to defending the claims brought by Retina; and (4) court costs. The first two forms of relief are "inextricably intertwined" with Retina's potential claims against NGS. Heckler, 466 U.S. at 624. Had Retina not suffered damages as a result of the Medicare underpayments and wrongful recoupments, Dynasty would have no claims against NGS for damages or apportionment. Dynasty's requests for attorneys' fees and related costs are likewise intertwined with the Medicare underpayment claims, as they would not have been incurred but for the alleged underpayments and wrongful recoupments.

Mindful that the Supreme Court has "foreclose[d] distinctions based upon the . . . the 'collateral' versus the 'noncollateral' nature of the issues," Illinois Council, 529 U.S. at 13–14, we conclude that there is a sufficient factual connection between Dynasty's claims and Retina's potential claims against NGS to bring the former under the purview of the Medicare Act. In effect,

15

Dynasty's central claim — its theory of liability — is that NGS failed to comply with the Medicare Act and related regulations. To resolve that claim, the District Court would have had to determine whether NGS breached its duties as a MAC. Where, as here, a district court is ultimately tasked with deciding whether a party was paid less than it was due under the Medicare Act, allowing a party to avoid the Act's jurisdictional bar by simply "styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits" would subvert the statutory scheme. Bodimetric Health Servs., Inc. v. Aetna Life & Cas., 903 F.2d 480, 487 (7th Cir. 1990). The fact that Dynasty is not a provider or a supplier is neither here nor there for our inquiry, which turns on the nature of the claims made, not the party bringing them.

Urging a contrary conclusion, Dynasty directs our attention to various differences between its claims and those that Retina could have pursued. In our view, any differences that may exist between the claims do not alter that Dynasty's claims are really "concealed claims for [Medicare] benefits." United States v. Blue Cross & Blue Shield of Ala., Inc., 156 F.3d 1098, 1109 (11th Cir. 1998). "A claim may arise under the Medicare Act even though, as

16

pleaded, it also arises under some other law." Midland Psychiatric Assocs. v. United States, 145 F.3d 1000, 1004 (8th Cir. 1998); see also Illinois Council, 529 U.S. at 5 (concluding that claims arose under the Medicare Act despite plaintiffs claiming injury under "various [other] statutes and the Constitution"). Thus, the channeling requirement applies even where a plaintiff's claim arises from an alleged violation of state law, so long as the claim is "inextricably intertwined" with claims for benefits under the Medicare Act. Heckler, 466 U.S. at 624.

Nor is Dynasty's position helped by the fact that it seeks declaratory relief as well as monetary damages. This is because its claims for declaratory relief are intertwined with its claims under the Medicare Act, and we have no reason to think that its claims for declaratory relief could be separately and alone brought in federal court by way of federal question jurisdiction. See Illinois Council, 529 U.S. at 13; Heckler, 466 U.S. at 615–16.

The "arising under" language of Section 405(h) is exceptionally broad, channeling "most, if not all, Medicare claims" through the system of administrative review. Illinois Council, 529 U.S. at 8. We conclude that Dynasty's claims against NGS arise under the Medicare Act because

17

resolution of its benefits-related claims would require the District Court to determine whether NGS improperly enrolled Retina and because Dynasty's requested relief generally tracks Retina's claim for benefits. The Medicare Act's jurisdiction-stripping provision thus forecloses Dynasty's arguments in favor of judicial review of these claims.

**II.      The Illinois Council Exception**

Having determined that Dynasty's claims arise under the Medicare Act, we turn to consider whether the District Court had federal question jurisdiction under 28 U.S.C. § 1331 based on the exception to Section 405(h) articulated in Illinois Council. In answering that question, we are aware that the Illinois Council exception is "narrow and will be construed strictly" to apply only in extraordinary circumstances. Illinois Ins. Guar. Fund v. Becerra, 33 F.4th 916, 924–25 (7th Cir. 2022); see also Sw. Pharmacy Sols. v. Ctrs. for Medicare & Medicaid Servs., 718 F.3d 436, 439 (5th Cir. 2013) (noting that "the Illinois Council exception is extremely narrow" and a plaintiff seeking to rely on it carries a "heavy burden").

In Illinois Council, the Supreme Court explained that "§ 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review

18

through the agency, but would mean no review at all." Illinois Council, 529 U.S. at 19; see Binder & Binder PC v. Barnhart (Binder II), 481 F.3d 141, 149 (2d Cir. 2007) ("Judicial review is available to a plaintiff under 28 U.S.C. § 1331 . . . where . . . there are no alternative means to review a federal claim arising under the [Medicare] Act."). The dispositive question is "whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review." Illinois Council, 529 U.S. at 22–23.

"Whether there would be 'no review at all' is an objective inquiry." Sensory Neurostimulation, Inc. v. Azar, 977 F.3d 969, 983 (9th Cir. 2020). "It may not be easy for a particular supplier to find an agreeable proxy, but particular suppliers' difficulties do not affect the analysis." Id. "A particular supplier's difficulty finding a proxy does not amount to 'hardship likely found in many cases . . . [causing] complete preclusion of judicial review.'" Id. at 984 (quoting Illinois Council, 529 U.S. at 22–23). Though we will certainly consider "factors that speak to a potential proxy's willingness and ability to pursue the plaintiff's claim," Council for Urological Interests v.

19

_Sebelius_, 668 F.3d 704, 712 (D.C. Cir. 2011), our primary focus is not on whether an individual party in a given case might itself be precluded from pursuing an unexhausted claim in federal court.  Instead, our focus is on whether the claims — here, claims for monetary benefits through indemnification and apportionment — fall within the channeling provisions of Section 405(h), and whether a narrow exception to the statutory scheme is necessary to ensure that certain claims or categories of claims are not excluded from judicial review.

Decisions from our sister circuits are instructive.  The Ninth Circuit has held that "if another party can bring the same claim through the existing administrative channel, and is sufficiently incentivized to do so, then some review is available, and the [Illinois Council] exception does not apply."  _Sensory Neurostimulation_, 977 F.3d at 983.  Similarly, the D.C. Circuit explained that "the Illinois Council exception is not intended to allow section 1331 federal question jurisdiction in every case where section 405(h) would prevent a particular individual or entity from seeking judicial review," because the exception "is primarily concerned with whether a particular claim can be heard through Medicare Act channels" and whether "roadblocks

20

practically cut off any avenue to federal court."  Council for Urological

Interests, 668 F.3d at 711–12 (quotation marks omitted); see also Sw.

Pharmacy Sols., 718 F.3d at 445 ("[P]recedent from this circuit and our sister

circuits merely requires that the proxies have some incentive to bring a

regulatory challenge on behalf of the aggrieved party.").[3]

These principles dictate that Dynasty cannot avail itself of the Illinois

Council exception to the administrative channeling requirement for at least

two reasons.

First, the Medicare Act and its regulations provided several procedures

through which Retina could have administratively exhausted its claims prior

to this litigation.  For example, a Medicare supplier like Retina may, on behalf

---

[3] Our Court's decisions invoking the Illinois Council exception are consistent with
this approach.  In Furlong v. Shalala, 238 F.3d 227 (2d Cir. 2001), we applied the
exception where the interests of the only stakeholders who might have a claim that
could be pursued using administrative channels were misaligned with plaintiffs'
interests.  There, the plaintiff physicians had an incentive to challenge a Government
policy, and their interests were not aligned with other physicians, whose success in
challenging the policy via administrative channels did not affect the way it was
applied to plaintiffs.  Id. at 231.  The plaintiffs' patients, moreover, had no incentive
to challenge the policy because a change would result in higher prices for them.  Id.
at 229.  In Binder II, we applied the Illinois Council exception because we concluded
that a plaintiff law firm could not depend on its former client to pursue
administrative relief where the law firm sought attorney's fees that would be
deducted from the former client's award. See 481 F.3d at 149–50.  Thus, in neither
Furlong nor Binder II was there the alignment of interests that exists here.

21

of a Medicare beneficiary, administratively appeal a MAC's initial determination and payment amount on a particular claim for payment and ultimately receive judicial review of that initial decision. See 42 U.S.C. § 1395ff(b)(1)(A); see also 42 C.F.R. §§ 405.906(a), 405.924(b)(11), 405.940, 405.960, 405.1002, 405.1100. As already described, an administrative appeals process similarly exists for a supplier to challenge a MAC's determination of an overpayment. See 42 C.F.R. § 405.379(b)(1)(ii). An administrative appeals process also exists for a supplier to challenge a MAC's denial of an application to enroll in Medicare or, potentially, an application to enroll more specifically as a participating supplier. See id. §§ 405.803(a), 498.5, 498.22(b), 498.40.

Second, medical billing services such as Dynasty that are "employed by [a] provider or supplier" for purposes of "prepar[ing] and . . . process[ing Medicare] payments," "act as the agent of the" supplier and may act as a representative of the supplier in proceedings before the agency, including in subsequent entitlement appeals. CMS, Medicare Claims Processing Manual, ch. 29, §§ 270.1, 270.1.1 (Aug. 30, 2019), https://go.usa.gov/xeHZA. Thus, at least while Dynasty represented Retina until January 2019, it also could have

administratively challenged the decision to enroll Retina as a nonparticipating provider under 42 C.F.R. §§ 405.803(a), 498.5, 498.22(b) and 498.40.

Dynasty responds that it did not discover the misclassification until 2019 and could not have been expected to administratively challenge Retina's enrollment as a nonparticipating provider before then. This response misses the mark. In deciding whether the Illinois Council exception applies to permit judicial review of a particular claim, we consider, among other things, whether a plaintiff's interests are aligned with the interests of other parties who have some incentive to bring the claim through the Medicare Act administrative channels and can serve as "an adequate proxy," able to "raise the plaintiff's claims in its stead." Council for Urological Interests, 668 F.3d at 712. We do so even where the plaintiff does not have standing to pursue administrative relief. If it turns out, for example, that the MAC's error led to an underpayment to the supplier, both the supplier and the plaintiff stand to gain from correcting the error.[4]

---

[4] Dynasty pushes us to disclaim any "proxy jurisdictional bar for § 405(h)." Appellant's Br. 26 (quotation marks omitted). But if we accept such a bar, Dynasty

23

Dynasty is not entitled to the exception because Retina's financial interests in the claims alleged in this case were aligned with Dynasty's interests at all relevant times, and Retina had both the incentive and the ability to seek administrative review. That Retina pursued a different course is irrelevant to our analysis under Illinois Council's "objective inquiry." Sensory Neurostimulation, 977 F.3d at 983. This is true even if we consider only the period after January 2019. Of course, had Dynasty noticed the misclassification earlier, it could have pursued its own administrative claim before the agency. But even if Dynasty could not have discovered the error in time to do so, Retina was in a position and had an incentive to seek administrative relief on its own behalf once it discovered the misclassification. The Illinois Council exception is unavailable to Dynasty because under either of those scenarios, judicial review would have been available.

---

maintains, we should require not only a clear alignment of interests in the claim alleged but also an agency relationship between the principal and the "purported proxies," where the principal has "present control over the . . . proxies." Appellant's Br. 26. We are not persuaded, as the requirement of a strict agency relationship between plaintiff and proxy is incompatible with the narrow exception carved out by Illinois Council.

**CONCLUSION**

We have considered Dynasty's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.